UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CRIMINAL NO. 04-10-KKC
CIVIL NO. 06-396-KKC

UNITED STATES OF AMERICA                                        PLAINTIFF


VS:                         REPORT AND RECOMMENDATION


STEVEN J. RICKARDS                                              DEFENDANT

* * * * * * * *

Defendant Steven Jody Rickards, proceeding *pro se*, filed the instant 28 U.S.C. § 2255

motion. *See* DE#131. The District Court, which sentenced Defendant, referred the matter to the

undersigned. The United States initially moved to dismiss the § 2255 petition premised on a

collateral-attack waiver contained in Defendant's underlying plea agreement. *See* DE# 138. The

motion sought summary enforcement of the waiver and did not address the substance of Defendant's

claims. The Court determined that it could not rely on the waiver to resolve all issues raised by

Defendant's § 2255 petition. *See* DE# 149. Thus, the Court ordered the United States to respond

on the merits, and granted Rickards time to reply. *See id*. The response and reply briefs stand

submitted, and the matter is now ripe for decision. *See* DE## 150 & 154. For the reasons stated

herein, the Court recommends that the District Court DENY Defendant's application for relief under

§ 2255.[1]

---

[1]
The Court also notes that the District Court rejected the § 2255 motion of Co-Defendant
Greg Boggs. *See* DE# 146. That motion raised a set of arguments nearly identical to the filing at
issue. The Sixth Circuit denied a Certificate of Appealability as to all issues concerning Boggs's
motion. *See* DE# 155.

**I.  Facts**

Drawing heavily on the underlying Plea Agreement, the Court provides the following factual history:

On August 3, 2003, the London Police Department responded to a complaint of a strong odor of ether near 200 Overbay Lane in London.  Upon arrival, the officers detected the strong odor and observed a white male running toward the rear of the mobile home residence.  The officers announced their identity as  London Police and began to pursue the fleeing subject on foot.  The officers subdued the subject on the porch to the back door of the residence and discovered that he was armed with a pistol inside his front pants pocket.  The subject was movant's Co-Defendant Michael John Campbell.  *See* DE #83, Plea Agreement ¶ 3.

Subsequently, a second person, Defendant Steven Jody Rickards, exited from the back of the trailer while officers handcuffed Campbell.  The officers asked both subjects whether anyone else was inside the trailer.  Both replied that Co-Defendant Greg Boggs was in the back bedroom.  When the officers called into the trailer, they did not receive a response.  Due to the heavy chemical odor, police called for an emergency response team and delayed entry until the team arrived with protective masks.  *See id.*

Upon entry, officers found Boggs inside the back bedroom with a working methamphetamine lab and several firearms within reach.  Authorities advised Boggs of his *Miranda* rights, and Boggs subsequently admitted to manufacturing methamphetamine for the past five to six months with others, including Rickards.  Likewise, authorities interviewed Defendant after advising him of his *Miranda* rights.  Rickards also confessed to manufacturing methamphetamine with Boggs and Campbell.  *See id.*

2

Co-Defendant Campbell further stated to police that he rented the subject mobile home, and lived there with his girlfriend Jennifer Milligan, her child, and Defendant Rickards. Campbell admitted to obtaining methamphetamine from Rickards and Boggs for the past several months and stated that Rickards and Boggs used the mobile home to manufacture methamphetamine on at least two occasions. Authorities also interviewed Milligan, who confirmed that Rickards used the residence to manufacture methamphetamine. *See id.*

Following the raid, officials recovered 4.8 grams of finished methamphetamine from the mobile home. DEA chemists, however, estimated that the most abundant precursor on the scene could have yielded 110.6 grams of methamphetamine. *See id.*

On February 26, 2004, the Grand Jury returned a thirteen count indictment against Defendant Steven Jody Rickards and Co-Defendants Gregg Boggs and Michael John Campbell. *See* DE#1, Indictment. The indictment named Defendant in Counts 1, 2, 3, 4, 5, 8, 9, 10, 11, and 13. After initially pleading not guilty, Rickards entered into a plea agreement with the United States.

Under the agreement, Defendant expressly admitted to the facts summarized above and agreed to enter a guilty plea to Counts 1, 8, and 13. *See* DE #83 Plea Agreement ¶¶ 1, 3. Count 1 states:

> On or about March 1, 2003, and continuing through on or about August 4, 2003, in Laurel County, in the Eastern District of Kentucky and elsewhere, Steven Jody Rickards, Greg Boggs, and Michael John Campbell did conspire to knowingly and intentionally manufacture fifty grams or more of methamphetamine, a Schedule II controlled substance, a violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

Count 8 provides:

> On or about August 4, 2003, in Laurel County, in the Eastern District of Kentucky, Steven Jody Rickards, Greg Boggs, and Michael John Campbell, aided and abetted by each other, did attempt to knowingly and intentionally

3

manufacture fifty grams or more of methamphetamine, a Schedule II
controlled substance, a violation of 21 U.S.C. § 841(a)(1), all in violation
of 21 U.S.C. § 846 and 18 U.S.C. § 2.

Count 13 states:

On or about August 4, 2003, in Laurel County, in the Eastern District of
Kentucky, Steven Jody Rickards and Greg Boggs, aided and abetted by
each other, in furtherance of the drug trafficking crimes set out in Counts
8, 9, 10, and 11 of this Indictment, for which they may be prosecuted in a
Court of the United States, did knowingly possess firearms, that is, a Smith
and Wesson .38 caliber revolver, and an Encom America MP9 9 millimeter
pistol, all in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2.

The plea agreement expressly described the "essential elements" relevant to each count. *See*
Plea Agreement ¶ 2. Defendant agreed that the United States could prove the essential elements of
Counts 1, 8, and 13 beyond a reasonable doubt, based on the explicit facts that Rickards admitted
in the plea agreement. *See id*. ¶ 3. In addition, Rickards agreed to have his sentence determined
pursuant to the Sentencing Guidelines and to waive any constitutional challenge to the validity of
the Guidelines. *See id*. ¶ 8. The plea agreement stated that Defendant was familiar with the
Supreme Court decisions in *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000) and *Blakely v.
Washington*, 124 S.Ct. 2531 (2004) and agreed to waive any challenge or claim notwithstanding
those decisions. *See id*. Finally, Rickards also waived the right to appeal or collaterally attack his
guilty plea, conviction, or any sentence that did not exceed 270 months of imprisonment. *See id*.
¶ 9.

Defendant formally pled guilty to Counts 1, 8, and 13 on July 21, 2004. *See* DE#54
Rearraignment at 24. Prior to the plea, the District Court established that Defendant had received
a written indictment and had reviewed the charges against him. *See id*. at 7-8. Furthermore,

4

Rickards acknowledged that he had discussed the nature of the charges with counsel and was pleased with the advice provided by his attorney. *See id*. at 8-9.

The Court then asked the Assistant United States Attorney (AUSA) to summarize the charges against Defendant. *See id*. at 9. The AUSA responded by restating Counts 1, 8, and 13. *See id*. at 10. Rickards affirmed that the information in the counts accurately reflected his conduct. *See id*. at 10.

The Court next directed its attention to the plea agreement. Defendant stated that he understood the terms and conditions of the agreement and that he had fully reviewed the agreement with counsel. *See id*. at 12. The Court specifically asked whether Rickards had carefully reviewed with counsel paragraph three of the plea agreement, in which Defendant admits that the Government could prove beyond a reasonable doubt the facts, described above, that "establish the essential elements of the offense". *See id*. at 13-14; Plea Agreement ¶3. Rickards affirmed that he had reviewed paragraph three with his attorney and again admitted that the Government could prove those facts because they were "true" and accurate. *See* Rearraignment at 14. Further, the agreement shows that Rickards initialed and dated each page of the Plea Agreement.

The Court then addressed possible penalties. With respect to Counts 1 and 8, the Court informed Defendant of the maximum and minimum penalty range, *i.e.*, that the maximum was "life" and the minimum "not less than 10 years." *See id*. at 14-15. As to Count 13, the Court informed Defendant that the minimum penalty was five years consecutive to any other punishment. *See id*. at 15. The Court further explained the nonbinding nature of the Sentencing Guidelines. *See id*. at 16-19.

Finally, the Court addressed Defendant's waiver of any right to appeal or collaterally attack a guilty plea, conviction, or sentence, as provided in paragraph nine of the plea agreement. *See id.* at 20. Defendant affirmed that he understood the terms and conditions of that provision. *See id.*

Before accepting the plea, the Court informed Defendant of his right to persist in a plea of not guilty and that the United States would have the burden to prove Rickards guilty beyond a reasonable doubt throughout the entire trial. *See id.* at 23. Rickards stated he did not want a trial and proceeded to plead guilty to Counts 1, 8, and 13. *See id.* at 23-24.

At the sentencing hearing on February 2, 2005, the Court sentenced Defendant to 144 months on each of Counts 1 and 8, to be served concurrently, and 60 months on Count 13, to be served consecutively to Counts 1 and 8, for a total term of 204 months. *See* DE#84, Sentencing Hearing at 8. Neither Defendant nor his counsel made any additional objections at the hearing. *See id.* at 10.

Rickards attempted to appeal his conviction and sentence to the Sixth Circuit. *See United States v. Rickards*, No. 05-5245 (6th Cir. Sept. 19, 2005) (Exhibit 1 to § 2255 motion). The United States moved to dismiss the appeal based on the appeal waiver in the plea agreement. *See id.* at 1. Defendant argued that the waiver is not enforceable because he did not knowingly and voluntarily enter into his plea. *See id.* The Sixth Circuit upheld the District Court's colloquy finding that "the defendant was 'fully competent and capable of entering an informed plea' and that 'the plea is made knowingly and voluntarily.'" *Id.* at 2. As such, the Sixth Circuit dismissed the appeal. *See id.*

Defendant subsequently filed the instant § 2255 petition. Again, the United States moved to dismiss the action premised on the waiver contained in Rickards's underlying plea agreement. *See* DE# 138. Because the Court determined that it could not summarily resolve all issues based on

the waiver, the Court ordered the United States to respond on the merits and granted Defendant time to reply. *See* DE# 149. The parties have filed briefs in accordance with the Court's instruction, and the matter stands submitted. *See* DE## 150 & 154.

## II. Issues Presented

The § 2255 motion raises several substantive issues, coalesced as follows:

1) Whether Defendant did not knowingly or voluntarily plead guilty to Counts 1, 8, and 13 because as to each the District Court failed to inform Rickards of the "true nature of the offense," "the true statutory maximum penalty" for the offense, or the constitutional rights Defendant was waiving by pleading guilty, as required by Rule 11(b)(1)(A)-(H) of the Federal Rules of Criminal Procedure.

2) Whether a sufficient factual basis existed to support Defendant's guilty plea to Counts 1, 8, and 13.

3) Whether the District Court lacked jurisdiction to convict Rickards because Defendant is not of the "class of persons" set forth in 21 U.S.C. § 841 and/or because 21 U.S.C. § 841 and 18 U.S.C. § 3231 were not properly passed into law.

4) Whether Defendant did not knowingly or voluntarily plead guilty to Counts 1, 8, and 13 because of ineffective assistance of counsel with respect to counsel informing defendant of the nature of the charges, the maximum penalty, the constitutional rights being waived by a guilty plea, and/or with respect to failure to raise the insufficient factual basis or jurisdictional issues to the District Court; and

5) Whether counsel on appeal provided ineffective assistance because counsel did not adequately respond to the Government's motion to dismiss and failed to raise meritorious issues before the Sixth Circuit.

The parties also dispute the validity and scope of Defendant's collateral-attack waiver, which the Court addresses as a procedural matter.

### III.  Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law.  *See* 28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish that the error had a "substantial and injurious effect or influence on the proceedings."  *See Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S.Ct. 1710, 1721-22 (1993)).  To prevail on a motion alleging non-constitutional error, the petitioner must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process."  *See Watson*, 165 F.3d at 488 (citing *Hill v. United States*, 82 S.Ct. 468, 471  (1962)).

The Court additionally recognizes Defendant's *pro se* status.  *Pro se* petitions receive a comparatively lenient construction by the Court.  *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (holding that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation" toward encompassing an allegation stating "federal relief").

### IV.  Analysis of Issues

#### A.     *Procedural Issues*

No procedural defects relating to successiveness, timeliness, or jurisdiction are at issue with respect to the motion.  However, both parties contest the validity and scope of Defendant's collateral-attack waiver.  The Court necessarily addresses this threshold matter first.

*Waiver*

In the plea agreement, Rickards unconditionally waived the right to appeal or collaterally attack his guilty plea, conviction, or sentence, provided that the sentence did not exceed 270 months of imprisonment.  *See* DE #83, Plea Agreement ¶ 9. The waiver provision textually applies in this case, since Rickards received only 204 months of incarceration.

According to the Sixth Circuit, collateral-attack waivers are enforceable if the defendant "knowingly, intelligently, and voluntarily" entered into the waiver agreement.  *See Davila v. United States*, 258 F.3d 448, 451-52 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999)(holding a "defendant's informed and voluntary waiver of the right to collaterally attack a sentence in a plea agreement bars such relief"); *In re Acosta*, 480 F.3d 421, 422 (6ᵗʰ Cir. 2007)(same).

The record reflects an informed and voluntary waiver in this case.  Defendant acknowledged, in both the plea agreement and at rearraignment, that he had reviewed the plea agreement with counsel and that he understood its terms, which include the waiver provision.  *See* Plea Agreement ¶ 14; Rearraignment at 12.  The District Court also personally addressed Rickards and specifically informed him of the waiver, in accordance with Rule 11.  *See* Fed. R. Crim. P. 11(b)(1)(N); Rearraignment at 20.  Defendant answered that he understood the consequences of that provision. *See id.*

Defendant's representations at rearraignment were voluntary and under oath, and the District Court assured Rickards's competency at the start of the hearing.  Solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings.  *See Blackledge v. Allison*, 97 S.Ct. 1621, 1629 (1977).  Thus, on this record, the Court

can only conclude that Rickards "knowingly, intelligently, and voluntarily" agreed to the collateral-attack waiver. *See Davila*, 258 F.3d at 451-52; *see also Watson*, 165 F.3d at 489; *In re Acosta*, 480 F.3d at 422.

Rickards offers an assortment of baseless counter-arguments. He complains that the plea colloquy, relative to the waiver provision, violated Rule 11(b)(1)(N) and the Sixth Circuit decision in *United States v. Murdock*, 398 F.3d 491 (6th Cir. 2005). Rickards also claims that the District Court provided "misadvice" after addressing the waiver provision. Finally, Defendant contends that he could not have knowingly agreed to the waiver provision because he never understood "his *Blakely*-related rights" and because "federal sentencing law" was "unsettled" at that time.

Defendant's arguments have no merit. A court satisfies Rule 11(b)(1)(N) when the waiver provision is "discussed in open court" and the defendant affirms that he understands the "plea agreement." *See United States v. Sharp*, 442 F.3d 946, 952 (6th Cir. 2006). Here, the District Judge explained the waiver provision, and Defendant acknowledged that he understood its consequences. *See* Rearraignment at 20. The exchange between Rickards and the District Court satisfies–if not surpasses–the Rule 11 requirements.[2] *See Sharp*, 442 F.3d at 952; *United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006).

Defendant plainly overestimates the obligations under Rule 11(b)(1)(N). Contrary to Defendant's contentions, Rule 11 does not require the district judge to discuss specific "details" or "nuances" relating to the waiver provision. *See Wilson*, 438 F.3d at 674 (finding the prosecutor

---

[2]

The District Court arguably exceeded its duty under Rule 11 by asking Defendant whether he *specifically* understood the *waiver provision*. *See Sharp*, 442 F.3d at 951 ("Rule 11 requires that the district court ascertain that the defendant understands the terms of the plea agreement, but it does not require that the district court ask a particular question about the appellate-waiver provision.").

"fully explained" the waiver provision by stating the "defendant agrees not to appeal his guilty plea conviction and sentence"). Rather, a straightforward explanation that briefly summarizes the waiver provision is adequate. *See id.* (rejecting the defendant's argument that the district court must "specifically read the portion of the plea agreement concerning the appellate waiver to him at the hearing").

Rickards's  purported reliance on *Murdock* is also misplaced. *Murdock* involved a Rule 11(b)(1)(N) violation because the district judge in that case completely overlooked the waiver term. The district judge did not inform the defendant about the existence of the waiver provision; the judge did not ensure that the defendant specifically understood the term; the judge did not determine whether the defendant had discussed the waiver with counsel; and the United States did not discuss the provision in its summary of the plea agreement. *See Murdock*, 398 F.3d at 494-95. Thus, the total failure to address the waiver plainly distinguishes *Murdock* from this case.[3] *See* Rearraignment at 20.

Next, Rickards argues that the District Judge provided "misadvice," after the Court had explained the waiver provision, causing Defendant to misunderstand the waiver's actual scope. Specifically, the District Judge stated that Rickards would have the right to appeal his sentence "if this Court should make an error of law in determining [the] sentence." *See* Rearraignment at 20. However, even *if* the advice is superfluous or erroneous, Sixth Circuit authority provides that such advice is "without effect," and has no impact on whether the defendant knowingly and voluntarily agreed to the waiver provision, which is a negotiated matter between a defendant and the

---

[3]

Instead of *Murdock*, the Court believes that *Wilson* actually controls in this case. In *Wilson*, the Sixth Circuit approved a Rule 11 waiver inquiry under facts very similar to those of Rickards's plea. *See Wilson*, 438 F.3d at 674.

11

Government.  *See United States v. Fleming*, 239 F.3d 761, 762-65 (6th Cir. 2005); *United States v. Rice*, 145 Fed. Appx. 155, 156-59 (6th Cir. 2005) (involving nearly identical facts).  Defendant's argument thus fails.

Finally, Defendant asserts that he did not have the "sort of understanding of his *Blakely*-related rights . . . that is required to make a knowing and voluntary waiver."  He argues that the district judge only made a passing reference to *Blakely* at rearraignment.  Rickards also highlights the "unsettled state of federal sentencing law" at the time of his sentencing.  *See* DE#143 Response at 5.  Defendant, however, acknowledged in the plea agreement that he was familiar with the Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296 (2004).  *See* Plea Agreement ¶ 8.  Rickards also specifically affirmed at rearraignment that he had reviewed paragraph eight with counsel, and that he understood that provision.  *See* Rearraignment at 19.  Moreover, a waiver remains effective even though federal law is evolving and subject to change.  *See United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005).  Plea bargains always entail risks relating to future developments, and the parties allocate these risks in the plea process and agreement.  *See id*. at 463-64.  A miscalculation by the defendant would not invalidate an accord between the accused and the United States.  *See id*.

Thus, the Court rejects Defendant's counter-arguments.  Rickards provides no legitimate basis to block waiver enforcement in this case, and the record otherwise establishes an informed and voluntary waiver.  The provision itself also contains no conditions that would limit its application.  *See* Plea Agreement ¶ 9.  According to its terms, the provision theoretically bars any claim that Rickards may raise on appeal or by collateral attack.

However, even if the waiver is valid and unqualified, there are enforcement limitations that apply as a matter of law. Arguments challenging subject matter jurisdiction, for instance, are never waivable. *See Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006); *see also United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993)("[J]urisdictional issues are never waived and can be raised on collateral attack."). The Sixth Circuit also distinguishes categorically between cases that involve "issues a defendant has validly agreed not to appeal or attack collaterally from those that go to the very validity of a guilty plea." *See In re Acosta*, 480 F.3d at 422. Thus, the *Acosta* Court posited: "[C]laims that a guilty plea was not knowing and voluntary, or was the product of ineffective assistance of counsel . . . generally cannot be waived." *See id*. at 422 n.2. Likewise, the waiver provision cannot bar arguments that attack the waiver itself.[4] *See id*. at 422 (explaining "it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself").

As a result, the collateral-attack waiver bars only Defendant's claim charging ineffective assistance of counsel on direct appeal. The remaining habeas claims challenge either Defendant's guilty plea or the District Court's jurisdiction. According to the Sixth Circuit, such claims are not

---

[4]

However, a waiver would still apply to claims that allege plea/waiver invalidity if such claims are patently baseless. *See In re Acosta*, 480 F.3d at 422 (indicating that waiver enforcement is proper if "the defendant *did not articulate a basis* for attacking the validity of his plea")(emphasis added); *Jones v. United States*, 120 Fed. Appx. 594, 596 (6th Cir. 2005)(enforcing waiver provision to bar ineffective assistance claim that attacked the "waiver itself" because the claim had "*no basis*" in the record)(emphasis added).

In this case, Defendant's petition contains several arguments that challenge the validity of his guilty plea. As to Defendant's guilty plea claims, the Court refuses to enforce the waiver. The Court believes that the arguments, which include ineffective assistance allegations, at least "articulate a basis" to attack the plea and thus warrant plenary evaluation. *See In re Acosta*, 480 F.3d at 422.

waivable. *See Short*, 471 F.3d at 691; *In re Acosta*, 480 F.3d at 422. The Court must therefore consider the merits as to each variety.

B.    *Substantive Issues*

1) *The District Court's compliance with Rule 11*

Defendant argues that he did not knowingly or voluntarily plead guilty to Counts 1, 8, and 13 because the District Court failed to inform him of the "true nature of the offense," "the true statutory maximum penalty for the offense," or Defendant's constitutional rights, as required under Rule 11. With respect to Counts 1 and 8, Rickards specifically claims that the District Court failed to explain to him that *drug type* and *drug quantity* were "essential elements" of the charged offense to be proven beyond a reasonable doubt. Defendant alleges that he would have proceeded to trial had he comprehended the full extent of the Government's burden.

Rule 11(b)(1)(G) directs a federal court to determine that a defendant understands the nature of the charges before accepting a guilty plea. A guilty plea is invalid if a defendant is not aware of the nature of the charges against him, including the elements of the offense. *See Bradshaw v. Stumpf*, 125 S.Ct. 2398, 2405 (2005); *United States v. Syal*, 963 F.2d 900, 904 (6th Cir. 1992). At a minimum, a defendant must understand the essential elements of the offenses to which he pleads guilty. *See Bousley v. United States*, 118 S.Ct. 1604, 1609 (1998).

Where the case involves a **simple** offense, a district court need only read or summarize the charges in the indictment and invite the defendant to ask questions, in order to comply with Rule 11(b)(1)(G). *See Syal*, 963 F.2d at 904-05 (citing *United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir. 1986)). Further explanation of the charges may be required if the case is more complex. *See Syal*, 963 F.2d at 905 (citing *Van Buren*, 804 F.2d at 891). However, there is no authority to

14

suggest that common drug offenses become complex simply because the amount or type of drugs is an offense element. *See United States v. Valdez*, 362 F.3d 903, 910 (6th Cir. 2004). Moreover, there is a presumption that the defendant is adequately informed of the nature of the charges against him where the defendant receives a written copy of the indictment. *See Bousley*, 118 S.Ct. at 1609.

To the extent that Counts 1 and 8 reflect simple drug offenses, the procedural steps taken by the District Court in Defendant's case plainly satisfy Rule 11. In this case, the drug type and amount specifically appeared in the indictment; the AUSA read the indictment to Rickards at the rearraignment; and Defendant acknowledged that he understood the charges against him and that those charges were accurate. *See* Rearraignment at 9-11. In this Circuit, for this type of crime, the Rule 11 threshold is "a sufficient summary" of the charges. The District Court's handling here was proper. *See Valdez*, 362 F.3d at 910; *see also United States v. Leachman*, 309 F.3d 377, 384-86 (6th Cir. 2002) (rejecting request to vacate guilty plea to §§ 841 and 846 because indictment reflected the amount of drugs, defendant implicitly agreed to the amount of drugs during the plea colloquy, and defendant waived his right to have the drug amount proven to a jury beyond a reasonable doubt); *United States v. Edgecomb*, 910 F.2d 1309, 1313 (6th Cir. 1990) (finding guilty plea to §§ 841 and 846 did not violate Rule 11 where the court read the counts in the indictment and defendant confirmed he understood the charges against him).

Defendant also admitted in the plea agreement, and reaffirmed at rearraignment, that the Government could prove the drug type and quantity beyond a reasonable doubt. *See* Plea Agreement ¶ 3; Rearraignment at 13-14. Additionally, the plea agreement specifically identified and described the "essential elements" of the offenses and the facts supporting those essential elements. *See* Plea Agreement ¶ 2-3; *United States v. Baez*, 87 F.3d 805, 810 (6th Cir. 1996) (finding

15

a guilty plea to §§ 841 and 846 did not violate Rule 11 because the plea agreement had a written description of the essential facts supporting the charges and defendant acknowledged the accuracy of those charges).[5]  Defendant further acknowledged that he had reviewed the plea agreement with counsel and understood its contents.  *See* Rearraignment at 12.  Moreover, Rickards received a written copy of the indictment and thus is presumed to have been apprised of the nature of the charges against him.  *See id.* at 7-8.  Under these circumstances, and without question, the Court fairly informed Defendant of the nature of the charges against him for Counts 1 and 8 in accordance with Rule 11(b)(1)(G).  In this regard, Defendant has not demonstrated any error resulting in either a "complete miscarriage of justice" or a "substantial and injurious effect or influence on the proceedings."  *See Watson*, 165 F.3d at 488.

With respect to Count 13, the § 924(c) charge, Defendant likewise argues that the District Court violated Rule 11(b)(1)(G) by failing to explain the elements of "knowingly" and "in furtherance of" or the offense of "aiding and abetting."  Rickards, however, offers no authority to establish that the charges under Count 13 required any greater attention or explanation than the charges under Counts 1 and 8.  In fact, at least one opinion by the Sixth Circuit treats a similar aiding and abetting charge under 18 U.S.C. § 924(c) as a **simple** offense.  *See United States v. Xiong*, 1999 WL 183353, at *5 (6th Cir. Mar. 16, 1999)(rejecting defendant's argument that aiding and abetting a § 924(c) violation is a complex offense).

---

[5]

Although the defendant in *Baez* challenged the factual basis supporting his plea under Rule 11, the Rule 11 requirement that a "defendant understand the essential elements of the crime is integrally related to ... [the] requirement that the district court determine that the plea has a factual basis."  *See United States v. Valdez*, 362 F.3d 903, 909 (6th Cir. 2004).

Here, as with the prior charges discussed, the District Court: assured receipt of the indictment (which listed the full § 924(c) charge); elicited an oral explanation of the charges from the Government; reviewed the written plea agreement (which identified all "essential" offense elements); assured that Rickards fully understood the charges and the plea terms; and assured a supporting factual basis, which Defendant admitted.  Rickards conceded that the Government could prove that he exited the mobile home where authorities subsequently found his confederate in "a working methamphetamine lab and several firearms within [Boggs's] reach."  *See* Plea Agreement ¶3(a).  Defendant's admitted involvement with Boggs as to said manufacturing and the lab further demonstrates that he "associated and participated in the use of the firearm" in connection with the underlying activities.  *See United States v. Morrow*, 977 F.2d 222, 231 (6th Cir. 1992)(upholding § 924(c) charge based on aiding and abetting liability).  Thus, the Defendant had been informed of the nature of the Court 13 charge.

Relying on *United States v. Gonzalez*, 420 F.3d 111 (2d Cir. 2005), Defendant further argues that the District Court failed, under Rule 11, to explain the "true statutory maximum" sentence, thus rendering his plea unknowing and involuntary.  *See* Fed. R. Crim. P. 11(b)(1)(H).  In sum, Defendant contends that the District Court failed to highlight the critical role of drug quantity and type in sentencing, and thus misstated the potential maximum sentence.  Rickards's reliance on *Gonzalez*, however, is misplaced.

In *Gonzalez*, the defendant pled guilty to conspiracy to distribute and possess cocaine in violation of 21 U.S.C. §§ 812, 841, and 846, but the defendant specifically disputed and did not admit to the *quantity* of drugs involved.  *See id*. at 116-17.  Following the guilty plea, the district court resolved the disputed issue at a sentencing hearing by a preponderance of the evidence.  *See*

17

*id*. at 118.  The Second Circuit found that this procedure violated the Supreme Court's decision in *Apprendi,* because defendant did not admit and a jury did not find the drug quantity, an essential offense element.  *See id*. at 133-34.

In this case, Defendant *admitted* in paragraph three of the plea agreement that the Government could prove the drug type and quantity beyond a reasonable doubt.  *See* Plea Agreement ¶¶ 3 & 3(e).  At rearraignment, Defendant again reaffirmed to the District Court that the Government could prove the stated facts beyond a reasonable doubt because they were true and accurate.  *See* Rearraignment at 13-14.  Furthermore, the Government read Counts 1 and 8 of the indictment to Rickards at the rearraignment.  *See* Rearraignment at 9-10.  Those charges specifically provided that Defendant conspired and attempted to manufacture "fifty grams or more of methamphetamine."  *See id*.  Unlike in *Gonzalez*, Defendant did not dispute the drug quantity alleged, but rather acknowledged the accuracy of the charges.  *See id*. at 10.  Thus, there is no error in this case because the statutory maximum punishment, as explained by the District Court, corresponds to the drug quantity and type admitted by Defendant.  *See* 21 U.S.C. § 841(b)(1)(A)(viii).

Rickards also asserts that the District Court should have informed him, under Rule 11, that he had a right to have any fact that may be used to increase his sentence proven to a jury beyond a reasonable doubt.  Defendant contends he would not have pled guilty if the Court had fully explained this right.  Rule 11 does not contemplate such specificity and technicality.  On this subject, rather, Rule 11(b)(1)(C) only directs the court to inform the defendant that he has a "right to a jury trial."  *See* Fed. R. Crim. P. 11(b)(1)(c).  In this case, the District Court specifically informed Defendant of his right to persist in a plea of not guilty and proceed to trial, where the

Government would have to prove Defendant guilty beyond a reasonable doubt. *See* Rearraignment at 23. By using this language, the District Court clearly met, if not exceeded, its obligation under Rule 11.

There is no authority to suggest that a district court is expected to go beyond the requirements of Rule 11, as Defendant proposes. Defendant fails to establish a basis for relief, showing neither a "complete miscarriage of justice" or a "substantial and injurious effect or influence on the proceedings." *See Watson*, 165 F.3d at 488.

### 2) *Adequacy of factual basis*

Defendant claims that the factual basis did not adequately support his guilty plea to Counts 1, 8, and 13, in violation of Rule 11(b)(3). As to Counts 1 and 8, Rickards specifically contends that the facts were insufficient to establish that he had the "intent to distribute" under 21 U.S.C. § 841(a)(1). The indictment, however, did not charge intent to distribute. Under 21 U.S.C. § 841(a)(1), it is "unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, *or* possess with intent to manufacture, distribute, *or* dispense a controlled substance." *See* 21 U.S.C. § 841(a)(1)(emphasis added). Defendant faced a charge under the former portion of the statute, making it a crime *inter alia* to *manufacture* a controlled substance. Therefore, Defendant's argument on this issue fails.

Defendant also claims that the Count 13 charge lacked an adequate factual basis. Rickards first argues that the facts do not establish possession "in furtherance of" the charged drug crimes. According to the Sixth Circuit, "[i]n order for the possession [of a firearm] to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). In this case, Defendant admitted

19

in the plea agreement that the police found Co-Defendant Boggs in the back bedroom of the trailer with a working methamphetamine lab and several firearms "within reach." *See* Plea Agreement ¶ 3(a). The proximity of the guns to Boggs while managing a working meth lab in the confines of a bedroom fairly establishes that the firearms were "strategically located so as to be quickly and easily available for use," within the meaning of *Mackey*.

Moreover, the record demonstrates that Defendant aided and abetted the § 924(c) violation by Boggs. *See* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal."). Authorities observed Defendant exit the mobile home where police subsequently discovered Co-Defendant Boggs with the working meth lab and firearms. *See* Plea Agreement ¶ 3. Rickards further admitted that he and Boggs were using the residence to manufacture methamphetamine prior to the raid. *See id.* These facts sufficiently demonstrate that Defendant "associated and participated in the use of the firearm" based on his conceded involvement and connection with Boggs, the lab, and the underlying crime. *See United States v. Morrow*, 977 F.2d 222, 231 (6th Cir 1992). This establishes that Defendant aided and abetted the 924(c) charge. *See id.* Thus, the factual basis–as it relates to the § 924(c) conviction–does not reveal a "complete miscarriage of justice" or "substantial and injurious effect or influence on the proceedings." *See Watson*, 165 F.3d at 488.

Defendant further contends that the facts do not establish that he "knowingly" possessed the firearms in violation of § 924(c). The facts admitted to by Rickards in paragraph three of the plea agreement do not address whether he "knowingly" possessed the subject firearms. However, the Government clearly read, and the indictment clearly charged, the § 924(c) elements applicable to Defendant. *See* Rearraignment at 9-10. Count 13 provides that Rickards "did knowingly possess

20

firearms" in violation of 18 U.S.C. § 924(c)(1)(A).  *See* Indictment, Count 13.  Defendant admitted that these charges were accurate.  *See* Rearraignment at 10.  Moreover, as stated, Defendant admitted that he and Boggs were using the mobile home to manufacture methamphetamine where police subsequently found Boggs, the working meth lab, and several firearms within Boggs's reach.  *See* Plea Agreement ¶ 3.  From these admissions, it was not a "complete miscarriage of justice" for the District Court to find a sufficient factual basis concerning Defendant's mens rea with respect to his aiding and abetting liability under § 924(c).  *See Watson*, 165 F.3d at 488.

    *3) The Court's jurisdiction*

    Defendant first argues that the District Court lacked jurisdiction for the offense charged in Count 1 because he is not among the "class of persons" to which 21 U.S.C. § 841(a)(1) applies.[6] In this regard, Defendant asserts that Congress designed the law at issue only to punish illegal drug trafficking among licensed physicians and pharmacists or by those who may lawfully manufacture and distribute drugs.  In support of these contentions, Rickards argues that the regulations promulgated by the Drug Enforcement Agency, pursuant to § 841, only address such licensed or recognized persons.  As such, Defendant concludes that he is not among the class of persons regulated under the statute.

    Although not precisely on point, language from both the Supreme Court and the Sixth Circuit refute Defendant's position.  *See United States v. Moore*, 96 S.Ct. 335 (1975); *United States v.*

---

[6]

    Section 841(a)(1) provides:

    *Except as authorized* by this subchapter, it shall be *unlawful for any person* knowingly or intentionally (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

21 U.S.C. § 841(a)(1)(emphasis added).

*Johnson*, 831 F.2d 124 (6th Cir. 1987).  In *Moore*, a practicing physician registered under the statute was charged with violating § 841.  He argued that § 841 applies only to non-registrants while §§ 842 and 843 govern registered practitioners.  The Supreme Court held that registered persons are also liable under § 841, where the registrant acts unlawfully.  *See id*. at 340.  In so holding, the Supreme Court found that criminal liability under § 841 "reaches 'any person.'"  *See id*. (citing 21 U.S.C. § 841(a)(1)).  The Supreme Court noted that Congress was "concerned with the nature of the drug transaction, rather than with the status of the defendant."  *See id*. at 342.  The Court explained that the applicable penalty depended on the legitimacy of the drug transaction.  *See id*.  Technical violations by registered persons engaging in legitimate transactions are subject to the penalties in §§ 842 and 843.  *See id*.  Congress reserved the severe penalties in § 841, on the other hand, for persons who deal in drugs for illegitimate purposes.  *See id*.  Although the case involved a registered physician, the Supreme Court's language strongly indicates that, as the plain text suggests, § 841 applies to "any person" engaging in illegitimate drug transactions, regardless of registration status under the statute.

The Sixth Circuit further clarified that the penalties under § 841 may apply to the activities of unregistered and unlicensed non-practitioners.  *See Johnson*, 831 F.2d at 127-28.  As an unlicensed non-practitioner, the defendant in *Johnson* was charged with violating § 841 for issuing prescriptions "outside the usual course of medical practice."  *See id*. at 127-28.  The defendant argued that only a licensed physician could commit such an offense.  *See id*. at 128.  The Sixth Circuit observed that the only significance of not being a licensed practitioner is that the defendant could never be *exempted* from the penalties under § 841.  Since defendant could not be exempt, the

22

Sixth Circuit held the defendant is "within the general rule [under § 841] which applies to 'any person.'" *See id.* at 128.

Lastly, in *United States v. Romig*, 2003 WL 22143730, at *1 (D. Minn. Aug. 18, 2003), the defendant raised the same "class of persons" argument presented here as to a § 841 charge. In response, the district court held that "[b]ecause [defendant] is not a practicing physician or otherwise able to lawfully manufacture, distribute, or dispense controlled substances, [defendant] is therefore included in the class defined as 'any person,' and not exempt from the penalties of § 841." *See id.* Based on all these authorities, and the clear language of the statute, the Court rejects Defendant's jurisdictional argument.

Rickards further contends that 21 U.S.C. § 841 was not properly enacted. The defendant in *Romig* raised this claim as well. The district court there rejected the theory. *See id.* The court found that Congress validly passed 21 U.S.C. § 841 into law. *See id.* This Court agrees, and the numerous convictions reviewed and upheld under § 841 collectively refute Defendant's contentions.

Finally, Defendant argues that the District Court lacked jurisdiction to impose judgement and sentence under 18 U.S.C. § 3231, because that statute never passed both houses of Congress.[7] The numerous courts that have addressed this issue have unanimously rejected Defendant's argument. *See United States v. Risquet*, 426 F.Supp.2d 310, 311 (E.D. Pa. 2006); *Mims v. United States*, 2006 WL 2559534, at *4-5 (E.D. Tex. Sept. 1, 2006); *United States v. Lawrence*, 2006 WL 250702, at *3 (N.D. Ill. Jan. 27, 2006). These courts have found that the "1948 amendment to § 3231 passed both houses of Congress and was signed into law by President Truman." *See Risquet*, 426 F.Supp.2d at

---

[7] That section grants federal district courts original jurisdiction over cases involving offenses against the laws of the United States. *See* 18 U.S.C. § 3231.

311.  Based on these cases, the Supreme Court's consistent application of said statute as a foundation of jurisdiction, *see id.*, and the absence of any legitimate contrary authority, this Court likewise rejects Defendant's jurisdictional argument.

      *4) Effectiveness of counsel prior to appeal*

      Rickards also asserts that he did not knowingly or voluntarily plead guilt to Counts 1, 8, and 13 because of ineffective assistance of counsel.  Specifically, and dovetailed with the substantive claims already rejected, Defendant complains that counsel failed to inform him of the nature of the charges, the maximum penalties, and the constitutional rights being waived under the guilty plea. Defendant also argues that counsel should have raised the factual basis and jurisdictional issues to the District Court.

      To succeed on a claim of ineffective assistance of counsel, a defendant must prove: 1) trial counsel's representation fell below an objective standard of reasonableness; and 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See Strickland v. Washington*, 104 S.Ct. 2052, 2064, 2068 (1984).  As to the prejudice prong in the context of a guilty plea, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 106 S.Ct. 366, 370 (1985).  In performing this evaluation, "counsel is strongly presumed to have rendered adequate assistance."  *See Strickland*, 104 S.Ct. at 2066.

      The Court must view Defendant's ineffective assistance of counsel theories in light of Defendant's own admissions in the record, the rearraignment proceedings and plea agreement, and the Court's substantive analysis in this disposition.  Rickards acknowledged to the District Court that

24

he had discussed the nature of the charges with counsel and specifically affirmed that he had reviewed the plea agreement with counsel. *See* Rearraignment at 8, 12. Moreover, Defendant stated that he was pleased with the advice provided by former counsel. *See id.* at 9. Under these circumstances, Rickards's bald, after-the-fact assertions cannot overcome the presumption that counsel rendered adequate assistance. *See Pointer v. United States*, 2004 WL 524720, at *4 (N.D. Ill. Mar. 11, 2004)(rejecting claim of ineffective assistance of counsel for failure to explain the nature of the charges and consequences of pleading guilty because these were explained to defendant at the plea hearing and because defendant indicated at the hearing that counsel apprised of him of his rights); *United States v. Kero*, 1994 WL 22306, at *4 (N.D. Ill. Jan. 24, 1994)(finding defendant's admissions at the plea hearing and in the plea agreement that he had read and understood the indictment with the assistance of counsel refuted defendant's allegations that counsel failed to explain the government's burden of proof). As such, Defendant cannot establish that "counsel's representation fell below an objective standard of reasonableness." *See Strickland*, 104 S.Ct. at 2064.

Defendant also fails to satisfy the applicable prejudice prong, for an ineffective assistance claim, as modified by *Hill*. Rickards essentially contends that he would have persisted in a plea of not guilty and proceeded to trial had former counsel adequately informed him of the nature of the charges, the maximum possible penalties, and the constitutional rights waived by his guilty plea. The record shows, and this Court already has found, that the District Court fully informed Defendant at the rearraignment proceedings, in addition to any advice provided by counsel. *See* Rearraignment at 9-10, 14-18, 23. As explained, the District Court fulfilled its duties under Rule 11 in this respect. Because the District Court apprised Defendant of his rights, the nature of the charges, and the

maximum possible penalties, Rickards cannot possibly show that the advice of counsel, reflecting the same information, would have changed his decision to plead guilty.  *See United States ex rel. Bonner v. Wyrick*, 426 F.Supp. 1205, 1206-09 (D.C. Mo. 1976)(rejecting ineffective assistance claim that defendant did not understand the nature of the charges where the trial court explained the charges, established the factual basis, and the defendant acknowledged the facts were accurate and that he understood the charges against him at the plea hearing); *Jenkins v. United States*, 2006 WL 1805871, at *3-6 (M.D. Fla. June 29, 2006)(denying ineffective assistance claim for failure to advise defendant of the nature of the charges against him because the district court adequately explained the charges and established the factual basis at the plea hearing).[8]  The Court rejects this claim.

*5) Effectiveness of counsel on direct appeal*

Although the collateral-attack waiver bars Defendant's claim that appellate counsel provided ineffective assistance, the claim alternatively fails on the merits.  On appeal, Rickards argues that former counsel did not adequately respond to the Government's motion to dismiss and failed to raise meritorious issues.  The ineffective assistance standard announced in *Strickland* also applies to appellate representation.  *See Abdurrahman v. Henderson*, 897 F.2d 71, 74 (2nd Cir. 1990); *Miller v. Keeney*, 882 F.2d 1428, 1433-34 (9th Cir. 1989); *see also Wyley v. United States*, 1997 WL 49073, at *1 (6th Cir. Feb. 3, 1997).

Here, Rickards admits that counsel filed a response to the Government's motion to dismiss the appeal, but he concludes that the two-page argument was "woefully deficient."  Defendant's

---

[8]

Defendant's contention that counsel's failure to raise the jurisdictional issues constituted ineffective assistance is similarly meritless, given the underlying argument's invalidity.  As to both counsel's conduct and prejudice, the argument fails.

conclusory and unspecified allegation regarding appellate counsel's response is plainly insufficient to prove that counsel's performance fell below an objective standard of reasonableness. "A convicted defendant making a claim of ineffective assistance *must identify the acts or omissions of counsel* that are alleged not to have been the result of reasonable professional judgment." *See Strickland*, 104 S.Ct. at 2066. (emphasis added). Moreover, counsel is "strongly presumed to have rendered adequate assistance." *See id*. Defendant's bare assertions do not overcome this presumption.

Furthermore, Defendant failed to establish prejudice, *i.e.*, that the result of Defendant's appeal would have been different if counsel had presented different or more detailed arguments in the response. *See Strickland*, 104 S.Ct. at 2068. Contrary to Defendant's assertions, the Sixth Circuit enforced the appellate waiver after fully reviewing Defendant's rearraignment plea. Based on the District Court's Rule 11 inquiry, the Sixth Circuit found that Defendant knowingly and voluntarily entered his plea and agreed to the waiver. For these reasons, Rickards did not demonstrate ineffective assistance of counsel on direct appeal.[9]

C. *Evidentiary hearing*

Defendant's petition requests an evidentiary hearing. On this record, the Court finds that such relief is unnecessary. The reviewing court need not conduct a hearing if the allegations in the petition are inherently incredible, refuted by the record, or conclusory. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

---

[9]

Although the Sixth Circuit's opinion on direct appeal did not evaluate the waiver as to collateral attack and did not address any ineffective assistance claims, the opinion definitively resolved the question concerning direct appeal waiver. *See, e.g., Taylor v. United States*, 59 Fed. Appx. 58, 60 (6th Cir. 2003)(applying "law of the case" doctrine to bar § 2255 movant from revisiting matters previously decided on appeal).

Here, no substantial factual conflict exists, and the record conclusively demonstrates that Defendant's § 2255 claims are meritless. *See Blanton*, 94 F.3d at 235. Thus, this matter warrants no additional evidentiary development by way of hearing.

> D.      *Certificate of Appealability*

A Certificate of Appealability may issue where the petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This requires the movant to demonstrate that "jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S.Ct. 1595, 1604 (2000). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *see also Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001)(requiring an "individualized determination of each claim" in considering whether to grant a certificate of appealability). None of the issues presented cross this threshold, for the reasons cited in the substantive analysis.

The determination on the merits is not debatable in this case. Rickards has not made a "substantial showing" as to any claimed denial of rights, as the detailed discussion for each claim demonstrates. Therefore, the Court recommends that, in the § 2253 context, the District Court refuse to certify any issues for appeal.

## V.      Recommendation

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court DENY, with prejudice, Defendant's § 2255 motion, *see* DE# 131; and

 2) should Defendant make a motion under 28 U.S.C. § 2253, the District Court refuse a Certificate of Appealability as to all issues.

28

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute.  As defined by § 636(b)(1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b),  and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

This the 10th day of September, 2007.

Signed By:

_Robert E. Wier_

United States Magistrate Judge

G:\04-10 Rickards\Recommendation.wpd

29